UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RUTH CARTER and
JAMES CARTER

CIVIL ACTION

VERSUS

NO. 08-216-JVP-DLD

MATRIX INITIATIVES, INC.
and ZICAM, LLC

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the court on a motion by defendants, Matrixx Initiatives, Inc. and Zicam, LLC, for summary judgment (doc. 20).[1] Plaintiffs, Ruth and James Carter oppose the motion (doc. 25), and defendants have responded to the opposition (doc. 28). Jurisdiction is based on 28 U.S.C. §1332. There is no need for oral argument and the matter is now submitted.

### BACKGROUND

The facts of this case are undisputed for purposes of the present motion for summary judgment. On February 23, 2007, plaintiff, Ruth Carter, used the homeopathic product, Zicam No Drip Liquid Nasal Gel Cold Remedy ("Zicam"). She immediately experienced "excruciating" and "blinding pain." The following morning, plaintiff noticed that she had lost her senses of smell and taste and was unable to work due to continuing pain. Plaintiff continued to experience pain and

---

[1]The petition alleges that Zicam is a "wholly owned subsidiary of Matrix Initiatives, Inc." Though the petition, and therefore, the caption, identify the parent company as "Matrix Initiatives, Inc.," the documents submitted by defendants consistently identify the defendant as Matrixx, Initiatives, Inc. Accordingly, the court herein uses the spelling consistently set forth by defendant.

loss of smell and taste and saw her primary care physician on March 2, 2007. At that appointment, she told her physician about her use of Zicam, her subsequent symptoms, and her belief that Zicam had caused the problems, but was told that her continuing symptoms were probably due to an allergy.

She later returned to her physician because the symptoms had not improved, and he referred her to an imaging center for radiographs. While at the imaging center on May 7, 2007, plaintiff mentioned to a technician that she thought her symptoms might have resulted from the use of Zicam. The technician responded by telling plaintiff that she had just received an email which notified technicians that they should "be on the lookout for this problem with Zicam."

Plaintiffs originally filed this action in the Twenty-First Judicial District Court, Parish of Livingston, on February 29, 2008. The petition alleges that, as a direct result of her use of Zicam, Ruth Carter suffered, *inter alia,* physical pain, severe sinus blockage, loss of her sense of smell, and a severe fungal infection of her sinuses and skin. The petition also alleges that her husband, James Carter, suffered a loss of consortium and "was caused to have heart surgery." (Petition, ¶¶ 4-5, 8-9, 10-11).

After removal on the basis of diversity jurisdiction, the court dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), all claims and damages not allowed by the Louisiana Products Liability Act, including those based on theories of recovery under negligence and fraud and upon plaintiffs' prayer for exemplary

2

damages (doc. 19).  Thus, the only claims now before the court are those based upon the Louisiana Products Liability Act.

Defendants, in support of the motion for summary judgment, note that the prescriptive period for product liability claims is one year from the date of injury and, they argue that prescription commenced on February 23, 2007– the day Ruth Carter claims to have used Zicam and experienced pain as a result.[2]  Because suit was not filed until February 29, 2008—over a year later—defendants argue that plaintiffs' claims are prescribed.

Plaintiffs, however, argue that the facts necessary to state a cause of action were not known or reasonably knowable by plaintiffs until the laboratory technician indicated that a causal connection had been identified between Zicam use and the symptoms she experienced.  In support of that position, plaintiffs direct the court to Ruth Carter's deposition statements to the effect that her primary care physician told her initially that he believed her symptoms were due to allergy, and indicated that he didn't know if Zicam could cause such a problem. Thus, they argue, the doctrine of contra non valentem applies, and the one year prescriptive period did not commence to run until at least May 7, 2007.

---

[2]Defendants cite article 3492 of the Louisiana Civil Code, which provides:
>Delictual actions are subject to a liberative prescription of one year. The prescription commences to run from the day injury or damage is sustained.  It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

## LAW AND DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether the movants are entitled to summary judgment, the court views facts in the light most favorable to the non-movants and draws all reasonable inferences in their favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997).

Plaintiffs cite *Sharkey v. Sterling Drug, Inc.*, 600 So.2d 701 (La.App. 1 Cir. 1992), in support of their assertion that the doctrine of contra non valentem applies in the present case. The court in *Sharkey* stated:

> Although the prescriptive period applicable to product liability cases is one year from the date damages are sustained (see LSA–C.C. art 3492), [Louisiana] jurisprudence adopts the doctrine of contra non valentem to the effect that prescription does not commence running until the facts necessary to state a cause of action are known or reasonably knowable to the plaintiff. The doctrine is consistently applied to cases in which allegations of medical causation are vital to the cause of action. In such cases, even if a plaintiff is aware that an undesirable condition developed at some point in time after medical treatment, prescription does not run until the plaintiff has actual or constructive notice of the causal connection between the medical treatment and the subsequent condition. See *Griffin v. Kinberger*, 507 So.2d 821, 823-24 (La.1987); *Zumo v. R.T. Vanderbilt Company, Inc.*, 527 So.2d 1074, 1077 (La.App. 1st Cir. 1988); *Knaps v. B & B Chemical Company, Inc.*, 828 F.2d 1138 (5th Cir. 1987).

> * * *
> The test for what constitutes notice sufficient to mark the commencement of prescription, enounced in *Cartwright v. Chrysler Corporation*, 55 La. 597, 232 So.2d 285 (1970) has been substantially modified by recent jurisprudence and is stated as follows in *Jordan v. Employee Transfer Corporation*, 509 So.2d 420, 423 (La.1987):
>> Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury. When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction. 509 So.2d 423.

*Sharkey*, 600 So.2d at 713-14 (footnote omitted).

The Louisiana Supreme Court has stated, however, that "in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage, even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damages as a result of the completed tortious act." *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 352 (La.1992); See also *Fontenot v. ABC Ins. Co.*, 674 So.2d 960, 964 (La.1996) (stating that "[i]gnorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription").

In the present case, the undisputed facts establish that Ruth Carter experienced actual and appreciable damages on February 23, 2007. She suffered "excruciating" and "blinding pain" almost immediately upon using Zicam and described the sensation as feeling like "an explosion in my head." (Carter Deposition, doc. 20-6, p. 57). She described the event as "terribly painful and damaging." (*Id.* at 61). She described her reaction to the incident by stating, "I thought permanent damage, I have damaged my head," and she further stated that she was unable to work the next day because of the pain. (*Id.* at 57-58). She also stated that, though her doctor told her she might be suffering from an allergy, she related all of her symptoms to the Zicam, stating "[e]verything after that, I related to the Zicam because that is when it happened, that is when it started." (*Id.* at 64)

Because the uncontroverted facts demonstrate that Ruth Carter suffered immediate, actual and appreciable damages on February 23, 2007, prescription commenced running on that date, regardless of knowledge subsequently obtained that might have a bearing on the extent or duration of the injury. The court, therefore, concludes that no genuine issue of material fact exists and the claims were prescribed prior to February 29, 2008, the date on which defendants filed suit.

## CONCLUSION

Accordingly, the motion by defendants, Matrixx Initiatives, Inc. and Zicam, LLC, for summary judgment (doc. 20), is hereby **GRANTED** and judgment shall be entered in favor of defendants, dismissing this action with prejudice.

Baton Rouge, Louisiana, October 23, 2009.

*(signature)*
JOHN V. PARKER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA